**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE OPELOUSAS DIVISION**

| | |
|---|---|
| RONALD LANDRY, ET AL | CIVIL ACTION NO. 09-1051 |
| VERSUS | JUDGE MELANÇON |
| ISLAND OPERATING COMPANY INC., ET. AL. | MAGISTRATE JUDGE METHVIN |

**MEMORANDUM RULING**

Before the Court are Ronald and Kathleen Landry ("Landry" or "plaintiffs") and their Motion to Remand [Rec. Doc. 6], Island Operating Company, Inc.'s ("Island Operating") Memorandum in Opposition [Rec. Doc. 11], Walter Oil & Gas Corporation's ("Walter Oil & Gas") Memorandum in Opposition [Rec. Doc. 12], and plaintiffs' Reply Memorandum in Support [Rec. Doc. 18]. For the foregoing reasons, plaintiffs' Motion [Rec. Doc. 6] will be **GRANTED.**

**I. BACKGROUND**

The present suit arises out of injuries plaintiff, Ronald Landry, a self-employed independent contractor, allegedly suffered on or about June 24, 2008, while welding a tanker owned by Exterran Energy Solutions LP ("Exterran") [Rec. Doc. 1-1, p. 2-3]. Plaintiffs allege that Island Operating and/or Walter Oil & Gas had control of the pressurized tanker immediately prior to Exterran. *Id.* p. 4. Furthermore, plaintiffs contend that flammable substances inside the tanker were owned by Island Operating and/or Walter Oil & Gas. *Id.* Plaintiffs' claims are based on, *inter alia*,

1

defendants' failure to warn or inform Landry of the presence of the flammables, failure to remove the flammables from the tank, failure to train, equip, or employ adequate personnel, failure to follow established safety standards, and other general allegations of negligence.

Plaintiff filed suit on May 29, 2009, in Louisiana's 16th Judicial District [Rec. Doc. 1-1], as Exterran's principal place of business is located in St. Martin Parish, namely, Broussard, Louisiana. *Id.* p. 3. Defendants removed the action to this Court on June 24, 2009, asserting that the complaint was encompassed by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.* and thus presented a federal question, giving the United States District Court for the Western District of Louisiana subject matter jurisdiction [Rec. Doc. 1]. Plaintiffs filed a motion to remand on July 6, 2009 [Rec. Doc. 6]. Prior to this filing, Island Operating filed an answer on June 25, 2009, stating a general denial [Rec. Doc. 2]. Walter Oil & Gas did likewise on July 10, 2009 [Rec. Doc. 10], as did Exterran on July 22, 2009 [Rec. Doc. 13]. Defendants oppose remand.

## II. LAW AND ANALYSIS

The sole issue presented in plaintiffs' motion to remand concerns the reach of OCSLA, 43 U.S.C. § 1331 *et seq.*, and its potential application to the instant case. The federal removal statute provides that, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C.

§ 1441(a).  Federal courts have original jurisdiction predicated on a federal question for matters "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal question claims may be removed "without regard to the citizenship or residence of the parties." *Id.*  "[T]he removing party bears the burden of proving that the court has jurisdiction to hear the claim." *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).  If "the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Defendants predicate removal on OCSLA, asserting that it extends to and governs plaintiff's complaint.  If OCSLA governs, then this Court is vested with subject matter jurisdiction based on a federal question even if OCSLA directs that Louisiana state substantive law applies.  However, if OCSLA does not govern, then there is no federal question, and the non-diverse parties must be remanded to state court.  OCSLA provides in pertinent part:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State …

43 U.S.C. § 1333(a)(1).  The statutory language appears to implement specific geographic limitations on OCSLA's applicability.  However, the jurisdiction granting provision, in reality, is somewhat broader in scope:

3

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the materials, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals…

43 U.S.C. §1349(b)(1). *See generally Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150 (5th Cir. 1996). The U.S. Supreme Court has found that "the purpose of [OCSLA] was to define a body of law applicable to the seabed, the subsoil, and the fixed structures … on the Outer Continental Shelf." *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969). While the purpose of the statute might be clear, the tension between §1333(a) and §1349(1) demands careful evaluation. *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150 (5th Cir. 1996).

### *A. Applying OCSLA*

Defendants contend that because the allegedly negligent acts physically took place on a situs governed exclusively by OCSLA, then OCSLA governs the dispute and confers subject matter jurisdiction on this Court. *See* Complaint, Rec. Doc. 1-1, p. 4 (alleging that the tank had been in control of Island Operating and/or Walter Oil & Gas on a fixed production platform in Gulf of Mexico). Plaintiff counters that the injury itself occurred on a land situs not governed by OCSLA (or, presumably, any other federal law), and thus OCSLA cannot confer jurisdiction.

"The Supreme Court and the Fifth Circuit have held that § 1333(a) creates a

"situs" requirement for the application of other sections of the OCSLA." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 219 (1986) ("Congress determined that the general scope of OCSLA's coverage … would be determined principally by locale, not by the status of the individual injured or killed."); see also *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 496 (5th Cir. 2002). The Fifth Circuit, in *Demette*, parsed the statutory language of § 1331(a) to determine the precise situses where the OCSLA could possibly apply:

> The OCSLA applies to all of the following locations:
> (1) the subsoil and seabed of the OCS;
> (2) any artificial island, installation, or other device if
>     (a) it is permanently or temporarily attached to the seabed of the OCS, and
>     (b) it has been erected on the seabed of the OCS, and
>     (c) its presence on the OCS is to explore for, develop, or produce resources from the OCS;
> (3) any artificial island, installation, or other device if
>     (a) it is permanently or temporarily attached to the seabed of the OCS, and
>     (b) it is not a ship or vessel, and
>     (c) its presence on the OCS is to transport resources from the OCS.

*Id.* at 497. The platform where the allegedly negligent acts occurred undoubtedly falls within the second category, as it is an artificial installation permanently attached to and erected on the seabed of the OCS with the purpose of resource exploration, development, and production. In contrast, the land-based location where the alleged accident occurred does not fall within any of the three situs categories.

5

The parties dispute whether the situs requirement refers to the place where the negligent acts took place or where the injury occurred. The Fifth Circuit has conclusively stated the "situs" required to trigger OCSLA refers to the location of the injury. *See, e.g., Golden v. Omni Energy Services Corp.*, 242 Fed. Appx. 965, 967 (5th Cir. 2007) ("OCSLA … compel[s] the district court to take into account the location of incidents giving rise to the lawsuit"); *Demette*, 280 F.3d at 496 ("First, we must determine whether the injury occurred on an OCSLA situs …"); *Mills v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 877 F.2d 356 (5th Cir. 1989) (en banc) (holding that applicability of §1333(b) limited to "situs" of injury).

It is a fundamental tenant of personal injury tort law that a "case or controversy", the threshold requirement of Article III, does not arise until an injury has occurred. Defendants' suggest that this action arose, not at the point of explosion on land (i.e. the injury), but at the point of their allegedly negligent act of allowing flammable substances to enter into or remain within the tank without plaintiff's knowledge (i.e. the breach of duty). Defendants' argument is without merit, regardless of the semantics employed. Defendants' theory, taken to its logical conclusion, would essentially immunize them from state courts (or give them unqualified powers of removal to federal court) simply through the nature of their industry. Such a suggestion does not comport with the regulatory scheme Congress set out to create when fashioning the remedies afforded under OCSLA. Congress

6

could not have intended so drastic a remedy. The manner in which plaintiff allegedly sustained injury simply bears too indirect and attenuated a relationship to any "operation" on the OCS for defendants to be allowed to invoke OCSLA. Specifically, the situs of the injury was on land, where general Louisiana state negligence law applies, negating the application of OCSLA. Moreover, defendants' numerous cited cases do not reveal a single instance where an actual injury suffered on land has been construed to be covered by the Outer Continental Shelf Lands Act.[1] Under the facts of this case, §1333 of OCSLA does not apply.

### B. §1349 and the Fifth Circuit's "But-For" Test

Assuming *arguendo*, as defendants contend, the situs of the injury is not dispositive, but yields to the catch-all jurisdictional grant of §1349,[2] defendants'

---

[1] Island Operating cites to numerous personal injury cases involving basket transfers from platforms to transport vessels, situations almost identical to the *Recar* case discussed *supra*. *See Simms v. Roclan Energy Services, Inc.*, 137 F.Supp.2d 731 (W.D. La. 2001); *Rivas v. Energy Partners of Delaware, Inc.*, 2000 WL 127290 (E.D. La. 2000); *Henry v. Tidewater Marine, Inc.*, 2000 WL 739273 (E.D. La. 2000); *Hughes v. Laborde Marine Lifts, Inc.*, 2007 WL 3124681 (E.D. La. 2001). Similarly, both Island Operating and Walter Oil & Gas also cite to cases either dealing with contract disputes over production (which name particular platforms and intend to cover energy operations on the OCS) or in rem proceedings that deal with real estate on OCS waters. *See, e.g., E.P. Operating L.P. v. Placid Oil Co.*, 26 F.3d 563 (5th Cir. 1994) (in rem partition action of OCS facilities and equipment); *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202 (5th Cir. 1988) (contract dispute over amount of gas accepted from energy producer); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir. 1985) (contract dispute over OCS platform construction); *Wilson Indus. v. Aviva America, Inc.*, 63 F.Supp.2d 747 (E.D. La. 1998) (contract dispute regarding supplies for oil and gas operations); *Gardes Directional Drilling v. U.S. Turnkey Exploration, Inc.*, 815 F.Supp. 956 (W.D. La. 1993) (in rem proceeding regarding liens on offshore property); *Fluor Ocean Services, Inc. v. Rucker Co.*, 341 F.Supp. 757 (E.D. La. 1972) (contract dispute regarding operations to raise sunken OCS platform).

[2] The Court need not address whether § 1333 and § 1349 may independently confer jurisdiction in their own right, or whether the sections must be read in tandem, since neither scenario would confer jurisdiction in this case. Therefore, whether the "situs" test of § 1333 and the "but-for" test of § 1349 should be conducted separately (as plaintiffs contend) or in tandem (as defendants argue) likewise is of no moment for purposes of this case. *See Golden*, 242 Fed. Appx. at 968 (holding that "situs" test is threshold inquiry and rejecting reading of "but-for" tests in tandem with it).

arguments fail to establish OCSLA's governance over this case. In *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150 (5th Cir. 1996), the Fifth Circuit discussed the "but-for" test used to determine whether an injury arose from or occurred in connection with an OCS operation to explore, develop, remove, or transport natural resources from the OCS. In *Tennessee Gas*, an ocean-going vessel, in the tow of a tug whose helmsman was reading a novel, allided with a platform secured to the outer continental shelf some thirty-five miles off the coast of Louisiana. *Id.* at 153. The Court concluded that if the injury occurred in connection with an operation that necessarily must have been performed only on the OCS, or if the injury necessarily came about only because of an operation on the OCS, then the "but-for" test was satisfied. *Id.* at 155.

Plaintiff's injury in this case does not satisfy the "but-for" test as articulated in *Tennessee Gas.* Plaintiff allegedly sustained injuries while welding a landed tanker containing flammable material. Both the tanker's explosion and the fact that it contained allegedly flammable materials were not existent solely because they came from a platform on the OCS. The tanker could just as easily have come from a non-OCS platform which would not be subject to OCSLA. Moreover, the location of the platform in the OCS did not change any material facts. If the platform that sent the tanker back to land would have been located within Louisiana's territorial waters, in foreign waters, or on land, the injury would have presumably happened in the same manner. The mere fact that the tanker involved in this incident had been in use on

the OCS does not confer federal question jurisdiction.

*Tennessee Gas Pipeline*'s satisfaction of the "but-for" test was based on a vessel's allision with a fixed platform – clearly, the platform's position in that exact location was necessary for the accident to occur. If the platform had been tethered in the OCS one mile away, or if it was located on land or anywhere else, then that allision would necessarily not have occurred. *See, e.g., Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982) ("but-for" test satisfied because helicopter pilot transporting offshore workers to fixed platform was killed over Gulf of Mexico en route to the platform – "but for" the pilot needing to fly to an OCS drilling platform, he would not have been flying over Gulf of Mexico); *Recar v. CNG Producing Co.*, 853 F.2d 367 (5th Cir. 1988) (injured maintenance worker rope-swinging from fixed platform to transport vessel waiting to bring him to another fixed platform satisfied "but-for" test because it occurred over OCS waters and neither the transport vessel nor the injured worker would not have been on OCS waters but for the platform).

The true nature of the "but-for" test, was made reasonably clear in *Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir. 1985). In describing the previous cases which fashioned the "but-for" test, the Fifth Circuit found that "[i]n each case we found that the decedent's work had furthered the operation of a fixed rig *on the shelf* and was in the regular course of extractive operations *on the shelf*. Neither death would have occurred 'but for' the extractive operations *on the shelf*." *Herb's Welding*

*v. Gray*, 766 F.2d 898, 900 (5th Cir. 1985) (emphasis added). The emphasis shows that proximity to the actual extractive operations is paramount. To restate the "but-for" test for causation, it should be asked: Would the injury have otherwise occurred but for the extractive operations on the shelf and the relationship of the injured's employment to the OCS activity? Neither plaintiff's alleged injuries nor the nature of his employment hinge on the fact that the tanker had seen OCS action or that his independently-contracted employer conducted OCS operations.

### III. CONCLUSION

As the situs of injury occurred on land, OCSLA does not establish jurisdiction under § 1333. The factual situation of this case does not pass Fifth Circuit muster under the "but-for" test, and OCSLA does not confer jurisdiction under § 1439. Accordingly, plaintiff's Motion to Remand [Rec. Doc. 6] will be **GRANTED** and this action will be **REMANDED** to the 16th Judicial District Court in and for the Parish of St. Martin, State of Louisiana, from which it was removed.